UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DEUTSCHE BANK NATIONAL ) <br> TRUST COMPANY, solely in its ) <br> capacity as Trustee, ) <br> ) <br> ) <br> Plaintiff, ) <br> ) <br> ) <br> v. ) <br> ) <br> WMC MORTGAGE, LLC, ) <br> ) <br> Defendant. ) | Civil Action Nos: <br><br> 3:12-cv-933  (CSH) <br> 3:12-cv-969  (CSH) <br> 3:12-cv-1699 (CSH) <br> 3:13-cv-1347 (CSH) <br><br><br> **AUGUST 4, 2014** |

**RULING ON SCHEDULING ORDER AND RELATED ISSUES**

**HAIGHT, Senior District Judge:**

Following extensive briefing and oral argument, the Court enters this Ruling, which serves as the Scheduling Order called for by Rule 16(b) of the Federal Rules of Civil Procedure.

**I. INTRODUCTION**

In a Ruling dated March 31, 2014 and reported at 2014 WL 1289234 ("the March 31 Decision"), familiarity with which is assumed, the Court denied motions by Defendant WMC Mortgage, LLC ("WMC") to dismiss in part the complaints of Deutsche Bank National Trust Company ("Deutsche Bank"), Plaintiff in the first three of the four numbered cases.  The March 31 Decision was subsequently applied to a motion by WMC to dismiss the fourth numbered Deutsche Bank case.  Finally, the March 31 Decision also denied a motion by Defendant WMC to dismiss in part the complaint of Plaintiff Law Debenture Trust Company of New York ("Law Debenture"), in

1

a case bearing docket number 3:12-cv-1538.

Each of the five cases is an RMBS case, that being the accepted acronym for the cases involving residential mortgage-backed securities that, like an Ebola-type litigation virus, are spreading through certain federal and state courts in the nation. The Law Debenture case is a companion case to the four Deutsche Bank cases, in the sense that WMC is the defendant in all five cases; the motions to dismiss in four of them, including Law Debenture, were argued and decided together; on June 19, 2014 the Court heard oral argument on all five cases together with respect to the form of Scheduling Order that should be entered under Fed. R. Civ. P. 16(b), and related issues on the proper management of the cases; and counsel for the several parties (different firms represent Deutsche Bank and Law Debenture) have submitted elaborate letter briefs, prior and subsequent to the June 19 hearing. This Ruling resolves all present issues.[1]

It is appropriate to characterize the Law Debenture case as a *companion* to the Deutsche Bank cases rather than *consolidated* with them. While the Court consolidated the first three Deutsche Bank cases with Law Debenture "for the limited purposes of hearing and deciding WMC's motions" to dismiss, 2014 WL 1289234 at *2, no further order of consolidation has been entered to date. The parties now dispute the extent to which the five cases should be consolidated as the litigation goes forward.

This Ruling deals principally with three issues: Consolidation; Sampling; and Scheduling Details. The directions of the Court which follow apply to the four Deutsche Bank cases and, where

---

[1] At the June 19 hearing, extensive argument was heard with respect to the vigorously disputed form of a Protective and Confidentiality Order to be entered in all five cases. The Court decided those issues in a Ruling filed on July 7, 2014 [Doc. 122]. A Protective Order consistent with that Ruling is now in place in all five cases. [Doc. 122-1].

2

indicated, to the single Law Debenture case. A separate Memorandum and Order will be filed in the Law Debenture case.

## II.  DISCUSSION

**A.    <u>Consolidation</u>**

In each of the four cases where it is Plaintiff, Deutsche Bank is represented by the Molo Lamken firm. Plaintiff Law Debenture is represented by the Ropes & Gray firm. WMC is represented in all five cases by the Jenner & Block firm.[2] No one suggests that all five cases should be consolidated for all purposes including trial. The dispute among counsel has to do with the wisdom of consolidation for the purposes of discovery. The question is governed by Fed. R. Civ. P. 42(a), which in cases involving "a common question of law or fact" empowers the trial court to join the cases for "hearing or trial," Rule 42(a)(1), or to "consolidate the actions," Rule 42(a)(2) – courses for which no party contends – and to "issue any other orders to avoid unnecessary cost or delay," Rule 42(a)(3). Consolidation of cases limited to discovery purposes falls under that subsection of the Rule. The issue is entrusted to the trial judges's discretion and is reviewable for abuse.

The contentions made by counsel with respect to consolidation of discovery appear in the previously filed Rule 26(f) Reports: Consolidated Doc. 108 in the Deutsche Bank cases and Doc. 50 in the Law Debenture case (amplified by oral submissions at the June 19 hearing). Counsel for WMC contend that "discovery should be consolidated for all five of the matters addressed in the Court's March 31, 2014 ruling," Doc. 108 at 13 and Doc. 50 at 9, those "five matters" being the four

---

[2]    Meaning no disrespect, I omit from this roster the names of the distinguished Connecticut firms acting as local counsel for the lead firms identified in text, whose main offices are located in other States.

Deutsche Bank cases plus Law Debenture. Ms. Poetzel reiterated that position at the hearing: "And you know our position is pretty simple. We think that these five cases should be consolidated for discovery but not for trial." Doc. 123 (Transcript ("Tr.") at 84.[3]

That proposal is vigorously resisted by Mr. Wolkoff, counsel for Law Debenture, who flung down the gauntlet in the Rule 26(f) Statement, Doc. 50 at 11: "Should WMC file a motion for such consolidation pursuant to Federal Rule of Civil Procedure 42(a), Plaintiff will oppose." Warming to his task, Mr. Wolkoff said at the hearing: "Nobody has argued here, WMC hasn't, that Law Debenture Trust should be consolidated for purposes of trial, but they are saying that we should be consolidated for purposes of all discovery. And we would stridently, your Honor, oppose that suggestion." Tr. at 62. That self-imposed adverb, if seriously meant, may not be deserved, but there is no mistaking the degree of Law Debenture's discontent with its inclusion in five-case consolidated discovery.

On this point, Mr. Molo, counsel for Deutsche Bank, makes common cause with counsel for Law Debenture. Mr. Molo is just as desirous of avoiding Mr. Wolkoff's company in discovery procedures as Mr. Wolkoff is that of Mr. Molo. In its Rule 26(f) Statement, Deutsche Bank describes differences between its cases and that of Law Debenture and contends: "Given those pronounced factual differences, the two Trustees and their respective counsel should be allowed to make their own separate strategic decisions about how to pursue discovery and litigate their cases." Doc. 108 at 12. The phrase "litigate their cases" smacks of exaggeration if construed as "try their cases," but in cases as massive and complex as these, the manners in which trial counsel plan and implement the panoply of pre-trial discovery go to the heart of litigating their cases.

---

[3] References are to the transcript of the June 19, 2014 hearing.

At the hearing, Mr. Molo expressed the jaundiced view that

> everything that WC is trying to do, including the consolidation . . .
>
> All of that is designed to constrict our ability to go ahead and conduct meaningful discovery and develop those facts. The only thing they want to do is stretch out the time in which it occurs.
>
> So they want to give us less of an opportunity to discover and take longer to do it. That I think is thematic throughout all of their requests.

Tr. at 129.

Ms. Poetzel rejects that canard. In the Rule 26(f) Statement, WMC's position is that:

> If the matters are not consolidated for discovery, WMC will be subject to multiple, overlapping document productions and depositions in each case grouping. Although each of the five cases involves unique loans and alleged breaches, there is substantial common ground. For instance, both DBNTC and Law Debenture allege that WMC did not follow its underwriting guidelines. As a result, documents and testimony related to WMC's underwriting guidelines and practices and policies regarding loan origination are likely to be the subject of discovery in all of the actions before the Court and are topics unrelated to the identity of the trusts or plaintiffs or the individual mortgage loans.

Doc. 108 at 14-15. In WMC's perception, these duplicative circumstances also extend to third-party servicers of the trusts; counsel concludes: "Requiring WMC and third parties to produce duplicate documents and testimony is inefficient and would result in a costly waste of time and resources." *Id*. at 15. At the hearing, Ms. Poetzel made this spirited response to her adversaries' criticism:

> You know, Mr. Wolkoff asked you rhetorically what's really going on here with respect to consolidation. And from our perspective what's really going on here is that the trustees in these cases talk a lot about efficiency. But they only want efficiency when its efficiency for them, and not efficiency for WMC, not efficiency for the multiple third parties that are going to be producing thousands of documents and sitting for depositions in these cases, and not efficiency for the

5

>   court in terms of addressing overlapping legal issues that exist between both the Deutsche Bank cases and the Law Debenture case.
>
>   So the reality is there are many efficiencies to be gained by consolidating these cases. The cases should be consolidated for those reasons. And any sort of small extension of time it takes for Law Debenture's case to move forward is vastly outweighed by those efficiencies.

Tr. 149-150.

This is an interesting question, well argued by counsel, and important to the future management of these massive and complex cases. I conclude that Plaintiffs have the better of the argument. One cannot quarrel in principle with WMC's professed desire to avoid duplication in the production of documents or depositions of witnesses. But one must ask whether, in practice, a single-minded pursuit of that objective would work unfair prejudice upon Deutsche Bank or Law Debenture. And I think it clear, contrary to WMC's protestations, that the minimization of duplication, to the benefit of WMC and third parties retained by WMC, would be purchased at the cost of maximization of complexities, even difficulties, in structuring, scheduling and accomplishing discovery, to the detriment of both Plaintiffs.

The number of permissible depositions illustrates the point. WMC contends in the Rule 26(b) Statement that after consolidation of all five cases for discovery, "the Trustees, as a group, and WMC should each be limited to a total of 20 depositions, which total covers both party-fact witnesses (including current and former party employees) and third parties, including borrowers." Doc. 108 at 18 (some parentheses omitted). In WMC's implicit perception, Mr. Molo and Mr. Wolkoff, representing the different wings of "the Trustees as a group," would have to negotiate among themselves about who gets to take what depositions of whom and when. Given the nature

6

and dimensions of these cases, I think that is asking too much of trial lawyers' collegiality, even as affable (and non-strident) as those appearing before the Court.  Counsel for the two sets of Trustees are entitled, within reasonable limitations applicable to the particular cases for which they alone are responsible, to set their own courses for discovery, in preparation for that ultimate ocean voyage we call a trial.[4]

The Court acknowledges that this conclusion will inevitably result in some duplication in respect of the production of documents and deposition of witnesses.  I can see why WMC would prefer to avoid any duplication, but I cannot see why in fairness it should be entitled to do so.  The records to date in these cases show that WMC originated tens of thousands of residential mortgages which were securitized and sold though the Trusts to investors, eventually losing the investors billions of dollars and making WMC millions.  No intimation as to the merits of the Plaintiffs' claims is intended by these statistics; they are simply intended to reflect the economic realities.  However, in the wholly predictable tsunami of litigation that followed, it is hardly surprising that WMC may have to endure some duplication of discovery procedures.  In the words of Arthur Miller: "It comes with the territory."  (I have quoted the author of *Death of a Salesman*, not the co-author of *Federal Practice and Procedure*).

---

[4]   WMC cites several cases in which trial judges consolidated a number of RMBS cases for discovery purposes.  District Judge Cote of the Southern District New York is a prominent figure in this jurisprudence.  I am certainly among the many admirers of Judge Cote's prowess as a trial judge, and would not presume to question her exercise of discretion in the cases before her.  However, it is a part of the kaleidoscopic fascination of the law that no two cases are ever exactly alike; a trial judge's selection among consolidation options is fact-intensive.  In the cases at bar, I conclude that the juxtaposition on the parties, the legitimate preferences of different trial counsel for different plaintiffs for litigating their case in their own way, and the absence of a persuasive reason why WMC should be entitled to veto those preferences, combine to show that I should decline to consolidate all five of these cases for discovery.  I will exercise my discretion accordingly.

One of the consequences coming with the territory that WMC chose to occupy is the professional preference of the different trial lawyers for the plaintiff Trusts in these cases to prepare the cases for trial in different ways by use of the discovery rules. The practice of trial law is frequently remunerative but almost always stressful. Trial lawyers are entitled to have different personalities, philosophies, tactical and strategic senses, concepts and designs. All lawyers must conduct their practice in compliance with the rules of procedure and evidence; but each is entitled to his or her overall evaluation of how best to prepare and try a case. It would be a dull world otherwise.

These legitimate differences begin to surface in the cases at bar. Consider Mr. Wolkoff. He expresses the view that discovery in the Law Debenture case can be completed with relative dispatch, and the case made trial ready, at a time when discovery and related issues are still engaging the energies of counsel and the Court in the Deutsche Bank cases and will continue to do so well into the future. Mr. Wolkoff's vision may be illusory, but he is entitled to hold it and try to make it a reality; and his proclaimed distress is somewhat akin to that felt by the captain of a fast merchant ship sailing in a wartime convoy whose Commodore, consistent with the rules of engagement, orders that the convoy's speed in the North Atlantic cannot exceed that of the slowest ship in line.

The analogy is not perfect, and in drawing it I do not intend to cast other counsel in the case, or even the Court, as members of a U-boat wolf pack whose possible presence the convoy fears. But I think that counsel for Law Debenture is entitled to prepare that case for trial as expeditiously as the circumstances of the case allow (provided always, of course, that WMC is not unfairly prejudiced thereby). WMC is not entitled to require that the speed with which the Law Debenture plaintiff sails toward the desired port of trial readiness be reduced to accommodate the slower speeds and longer

8

ocean passages of the Deutsche Bank plaintiffs. To do so would unfairly prejudice Law Debenture. The only way to avoid doing so is to refrain from consolidating discovery in the Law Debenture case with discovery in the Deutsche Bank cases. That may prejudice WMC, in the form of some duplication in discovery, but given the totality of the circumstances in these cases, I am unable to regard any prejudice to WMC, or to third parties associated or affiliated with WMC, as unfair.

For the foregoing reasons, on the question of consolidation the Court will enter an Order under Rule 42(a)(2), Fed. R. Civ. P., consolidating the four Deutsche Bank cases for all purposes, including trial. Counsel in the firm representing Deutsche Bank in these cases will have to agree on the taking of discovery only with themselves, which should pose no problems. As for a consolidated trial, counsel will presumably refrain from submitting proof on all four cases simultaneously, and with counsel's assistance the Court should be able to figure out which case is being tried on a particular day.

The Court will make no order with respect to consolidation involving the Law Debenture case.

**B.     Sampling**

*Sampling*, or more precisely *forensic sampling*, has become a familiar feature in RMBS litigation, now spreading like an Ebola virus in the Southern District of New York (federal cases) and New York County (state cases), as well as more remote locations like the District of Connecticut and the District of Minnesota. Sampling is intended to make manageable a trial involving thousands of individual residential loans – the Deutsche Bank case bearing docket number 12-cv-933 alone concerns 12,898 loans. There is force to Mr. Molo's *cri de coeur* at the hearing: If there is a trial "where we'll sit here and go through mortgage file by mortgage file, I'm going to leave this

9

courtroom and go to the realtor across the street and buy a home in New Haven, because I know I'm going to be here a long time for that trial." Tr. at 28.

Mr. Molo is generous in his appraisal of the charms of this pre-Revolution colonial city, but he does not want to live here, and neither do other counsel, who regard it as unnecessary because they share the perception that at the trial on the merits "it's going to be experts testifying about their review of the loans and presenting the testimony in a summary fashion in a way that the parties can understand, but review in an efficient manner." Tr. 100.  I have quoted Ms. Poetzel, speaking for WMC.  Plaintiffs in these cases propose that the summary fashion in which their evidence will be presented at trial take the form of forensic sampling of the thousands of underlying mortgages, and the testimony of expert witnesses who analyze the results of that sampling.  The present question, posed at this early stage of the litigation, is what, if anything, the Court should say at this time about the propriety and admissibility of sampling evidence and interpretation.  Counsel's views differ.  Their differences may fairly be summarized thus.  Counsel for WMC: "Say nothing."  Counsel for Deutsche Bank: "Say something."  Counsel for Law Debenture: "Say everything."

I begin with the observation that the March 31 Decision, I discussed at some length the subject of sampling in cases of this nature. 2014 WL 1289234, at *10-*12.  Particular attention was paid to Judge Rakoff's trial decision and judgment in *Assured Guaranty Municipal Corp. v. Flagstar Bank, FSB* ("*Flagstar*"), 920 F.Supp.2d 475 (S.D.N.Y. 2013), an RMBS case in which Judge Rakoff based his liability and damages conclusions against the defendant bank upon opinions expressed by plaintiff's expert witnesses drawn from the results of forensic sampling of nonperforming loans.  I quoted with manifest approval Judge Rakoff's statements in his judgment that he "accepts sampling as an appropriate method of proof in this case," and "Sampling is a widely accepted method of proof

in cases brought under New York law, including in cases relating to RMBS and involving repurchase claims," *id*. at *12. To those judicial expressions of faith, I added my own benediction in the March 31 Decision: "Judge Rakoff's reasoned approval of sampling as a source of probative evidence in *Flagstar* is instructive in liability aspects of the case at bar," particularly since Judge Rakoff was deciding his case after trial and I was deciding a motion to dismiss the complaint. *Id.* That postural difference led to my final observation in the March 31 Decision on the subject of sampling: "If forensic sampling of this sort is acceptable proof at trial in establishing the liability of a securitizor like WMC, *a fortiori* that sampling is acceptable in pleading a plausible claim." *Id*.

One might have thought that my expressions in the March 31 Decision about sampling would fall so gratefully upon Mr. Molo's ears that he would keep silent, preserving the tranquility of the moment, hoping that nothing would transpire to disturb the salutary state of the judicial mind on the point. But counsel for Deutsche Bank filed a letter brief on June 12, 2014, in advance of the June 19 pre-trial conference and hearing, which stated:

> A significant issue will be whether Plaintiff must prove on a loan-by-loan basis at trial that each of WMC's mortgage loans is defective, or whether Plaintiff may instead rely on statistical sampling. . . . [W]e respectfully request that the Court issue an order expressly permitting the use of statistical evidence at trial. . . . A ruling clarifying that sampling is permissible would streamline both discovery and trial. We thus respectfully request that the Court use the conference to confirm its prior rulings and approve sampling for proving both liability and damages at trial.

Molo Lamken Letter dated June 12, 2014 at 1, 4. This letter is what I summarize as a request by Deutsche Bank that the Court *say something* about sampling at this time.

The Molo Lamken letter of June 12 inspired and provoked – both words are probably apt – Ms. Poetzel to respond with a letter brief dated June 18, 2014 (one day before the hearing). That

11

letter begins by professing WMC's willingness and ability "to address the propriety of sampling," but charges that Deutsche Bank's June 12 letter "seeks to short-circuit full consideration of the issue. It seeks to obtain an opinion approving sampling in the absence of briefing, or the identification of any expert, sample, or sampling methodology. This improper request should be denied." Jenner & Block Letter dated June 18, 2014 at 1. The letter concludes by asserting that "the question of sampling should be deferred until Deutsche Bank presents a specific sampling methodology applied to the evidence in this case for the Court to assess." *Id*. at 5. Counsel have in mind the judicial assessment of a proffered expert witness opinion's admissibility under the Supreme Court's decision in *Daubert*[5] and its progeny, viewed through the prism of Rules of Evidence 702 and 703. This letter is what I summarize as a request by WMC that the Court *say nothing* about sampling at this time.

When counsel came to address this subject at the June 19 hearing, it became less apparent that there is a genuine controversy between these two parties on the issue. Mr. Molo said on behalf of Deutsche Bank:

> [T]he *Daubert* question is one for later. We agree with that. . . .
>
> But as a general matter, the notion of whether the court would allow the use of sampling as a method of proof is the issue that we just wanted to put on the table. Maybe that's already been decided as a result of what your opinion noted. It certainly has been a method of proof that's been used in other cases like this.
>
> So, perhaps, we were being too cautious in filing our letter with the court asking for a ruling that, in fact – that would be an appropriate method of proof, subject of course, to Rule 702 and 703. So that's all we've done. . . .
>
> [I]f the court were to say "no, I do not deem this is an appropriate method of proof," then I think discovery would look a little different.

---

     5    *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

> And I think there'd be some potential for waste of time, wasted money. And so we're really raising it at this stage for that purpose, as a matter of the court's authority to schedule the matter and allow the parties to proceed with some level of predictability. That's all.

Tr. at 15-16.

As the June 19 hearing continued, Ms. Poetzel responded to these assertions by saying that

> really, for your Honor here today, the question is does there need to be something in the Rule 16 scheduling order addressing sampling. We think that there does not need to be something in the Rule proceed in an scheduling order addressing sampling. And we think it would be premature for the court to address sampling at this time.
> . . .
> [I]f you choose [a rhetorical aside to Deutsche Bank's counsel] that you think you want to do your case via sampling, do your expert, do whatever discovery you need to do, produce your expert, the defendants will make a *Daubert* motion, and we'll address it in the usual course, as far as these things go. So that's what we would ask the court to do today, your Honor.

Tr. 95, 101-102. In other words: The Court should say *nothing* about sampling at present. Ms. Poetzel included in her remarks a sneak preview, one might say, of the position WMC will take when, in her world view, the future day of reckoning for sampling arrives:

> [T]here's the issue of WMC's own discovery strategy, and our right to present our defense in the way that we see fit. *And we don't think sampling is appropriate.* . . .
>
> We think there are other ways to address how a trial in this case could proceed in an efficient manner, that are different from sampling.

Tr. 97-98 (emphasis added). I take these comments to signal the rejection by WMC of sampling evidence as a broad matter of principle (no expert witness can ever base any admissible opinion on sampling data ), rather than as a narrow matter of practice (*this* witness cannot express *that* opinion because the proffered opinion does not pass muster under *Daubert* and Rules 702 and 703).

13

The dispute between Deutsche Bank and WMC appears to come down to whether the Court, in fashioning a Rule 16(b) order (in which the Court must clearly say *something* about *something*) should say *anything* about sampling as a form of proof in these RMBS cases. I will revert to the differing positions taken by Deutsche Bank and WMC on this issue, as revealed by the present record. But attention must also be paid to the position recently taken by the Law Debenture plaintiff, whose counsel, Mr. Wolkoff, contends that at this relatively early stage, the Court should say *everything* on the subject of sampling.

Mr. Wolkoff makes that contention in a motion he filed on July 22, 2014 in the Law Debenture case [Doc. 60] captioned "Plaintiff's Motion for an Expedited Determination of Statistical Sampling." The Notice of Motion recites that "it seeks an expedited determination of whether the Separate Trustee may establish the extent of Defendant WMC Mortgage LLC" ('WMC's') liability and damages based on a statistically significant random sample of the loans at issue." Doc. 60 at 1. According to the proposed order the Trustee submits with this motion [Doc. 60-1], that purpose will be accomplished by means of scheduled exchanges between counsel of a "proposed statistically significant loan sample" and opposition to it; a deadline "for WMC to submit any *Daubert* motion on statistical sampling and any rebuttal expert report on sampling"; a deadline for opposition and reply papers in respect of such a motion; and the setting by the Court of a date for a "hearing on *Daubert* motion on sampling."

These motion papers also identify Law Debenture's expert witness on statistics as Nelson R. Lipshutz, Ph.D., whose declaration [Doc. 61-2] describes the sampling procedures he intends to follow, and concludes with the confident prediction: "The random samples which I will construct will provide a sound and accepted statistical basis for assessing the extent of WMC's liability and

14

damages." *Id*. at page 7, ¶ 18. Dr. Lipshutz is not a stranger in the world of RMBS litigation. He appeared as the plaintiff's statistical sampling expert in the *Flagstar Bank* case before Judge Rakoff, 920 F.Supp.2d 475 (S.D.N.Y. 2013). During the bench trial in *Flagstar*, Judge Rakoff accepted Dr. Lipshutz's sampling methodology and opinions, which contributed significantly to the judgment in plaintiff's favor. *See* discussion at 920 F.Supp.2d 501: "The Court finds that the evidence proffered by both Dr. Lipshutz and Dr. Mason is clear, credible and convincing. As more fully described below, the sample size suggested by Dr. Lipshutz provided an adequate basis for assessing whether the Trusts as a whole complied with or breached Flagstar's representations and warranties . . . "

WMC has not yet responded to this motion by Law Debenture for expedited consideration of the sampling question. Given the motion, it is fair to say that Law Debenture is asking the Court to say *almost everything* about sampling at this early stage. I qualify the proposition because the procedure the motion suggests culminates in a full-scale *Daubert* hearing with respect to Dr. Lipshutz's anticipated sampling results and opinions. If plaintiff fully prevails on that motion, the result is that the Court, as *Daubert* gatekeeper, flings open the gate and allows the evidence to enter the arena of a full plenary bench trial. The Court will then decide upon the value of the evidence in arriving at a judgment. We deal, in other words, with the traditional evidentiary distinction between *admissibility* and *weight*.

This pre-*Daubert* motion by Law Debenture is discussed further in the separate Rule 16(b) order the Court enters in that case concurrently with this one. To revert to the situation in the captioned cases, which pit Deutsche Bank and WMC against each other: Neither of the extreme positions on sampling those parties have suggested can be accepted. In their June 12 letter at 1, counsel for Deutsche Bank request that the Court "issue an order expressly permitting the use of

statistical sampling at trial."  A trial judge's order "expressly permitting" the use of evidence at trial requires precise knowledge on the judge's part of what the evidence is, and whether it passes muster under F. R. Evid. 403, 702, 703, or other rules governing admissibility.  Deutsche Bank does not pretend to offer such specifics (unlike Law Debenture, which identifies its expert witness, describes what his evidence will be, and hits a fast-forward button for an expedited *Daubert* hearing). The apparent reliance of counsel for Deutsche Bank upon what I said in the March 31 Decision about Judge Rakoff's handling of statistical sampling evidence in *Flagstar* prompts the question: If I said it earlier, why must I say it again?

      WMC, for its part, seeks to limit this Court's prior remarks as holding or suggesting no more than that Deutsche Bank "could use sampling as a means of *giving notice* of which loans were allegedly in breach."  June 18 letter at 3 (emphasis in original).  That blinkered reading, possibly informed by wishful thinking, distorts the references in my March 31 Decision to Judge Rakoff's decision in *Flagstar*.  To recapitulate: In the March 31 Decision, 2014 WL 1289234 at *12, I praised as "persuasive" Judge Rakoff's observation that "Sampling is a widely accepted method of proof in cases brought under New York law, including cases relating to RMBS," which led him to reject "Flagstar's challenge to the use of statistical sampling to prove liability in this case," 920 F.Supp.2d at 512.  I further said in the March 31 Decision that "Judge Rakoff's reasoned approval of sampling as a source of probative evidence in *Flagstar* is instructive in liability aspects of the case at bar." *Id*.

      Those passages can only be read as declarations on my part that statistical evidence is an accepted and useful way of proving liability (and by extension, damages) in an RMBS case.  In the March 31 Decision I said it twice.  The most I may appropriately do, at this slightly later stage in the

case at bar, is to say it again, thereby bringing myself within Lewis Carroll's dictum in *Hunting of the Snark*: "What I tell you three times is true." I am satisfied that statistical sampling is, *in principle*, an acceptable way of proving liability and damages in an RMBS case such as this one. Whether *in practice* particular proffered statistical sampling evidence is admissible and persuasive are quite different questions, which have not yet been reached in the five cases before me (although a *Daubert*-like determination of admissibility may be drawing closer in the Law Debenture case). On the subject of sampling, the Court says no more. For the present, the rest is silence.

**C.    Further Scheduling Issues**

After the district court receives the parties' reports under Federal Rule of Civil Procedure 26(f), which has occurred in this case, Fed. R. Civ. P. Rule 16(b)(1) mandates issuance by the court of a scheduling order, with certain required contents, Rule 16(b)(3)(A), and other permitted contents, Rule 16(b)(3)(A). Rule 16 is supplemented by Local Civil Rule 16, and by this Court's Standing Order on Scheduling in Civil Cases and Form 26(f) Report. The latter requires, *inter alia*, a specification of the total number of depositions each party will require, and an indication of whether a party will "request permission to serve more than 25 interrogatories." Should differences of opinion on these points emerge from the parties' Rule 26(f) reports, the district judge resolves them by means of Rule 16(b)'s provisions that the court's scheduling order must limit the time "to complete discovery," and may "modify the extent of discovery."

We may note two characteristics of scheduling orders entered at this early stage of litigation: they depend upon the nature of the case, and they are inherently preliminary. First, a diversity case involving an automobile collision on the I-95 between a New York citizen and a Connecticut citizen will in all likelihood require fewer depositions and interrogatories than the diversity cases at bar,

involving RMBSs. Second, estimates of quantity and time in such a scheduling order are subject to modification as the case goes forward. Consider, for example, the number of depositions permitted by the order. If counsel for a plaintiff decides after taking a lesser number of depositions that sufficient evidence has been discovered or preserved to take the case to trial on the merits, presumably counsel would have the sense not to take additional depositions just because he or she could do so. Conversely, if counsel for a defendant concludes that the number of depositions taken by plaintiff, while still within the scheduling order's permitted total, have become cumulative, duplicative or harassing, counsel may apply to the district court for a protective order under Rule 26(c).

Mindful of these salutary principles, the Court turns to the Scheduling Order appropriate for the cases at bar (which, it will be recalled, were consolidated for all purposes *supra*).

### 1. **Completion of Fact Discovery**

The parties recite in their Consolidated Supplemental Rule 26(f) Report [Doc. 108] at 9 that they jointly request modification of the Standing Order so as to provide that "Fact discovery shall be completed within one year of commencement." The Court adopts that modification, and directs in this Order that fact discovery shall be completed within one year of the commencement.

That is the only area of agreement by the parties in respect of scheduling. All other points of timing, deadlines, and related issues are disputed. The Court has considered the conflicting contentions of counsel in the Rule 26(f) report, as amplified in submissions made during the June 19 hearing. The relevant disputes are resolved in the following paragraphs.

### 2. **Expert Discovery**

Each party must disclose the identities of all trial experts one day after fact discovery closes.

Discovery in respect of such experts is to be completed five months after the completion of fact discovery.  Expert discovery is to be accomplished in the following manner: (a) Opening reports of retained experts to be furnished to opposing counsel 30 days after the close of fact discovery; (b) Rebuttal expert reports to be furnished 60 days after receipt of the opening reports; (c) Depositions of all experts to be completed 60 days after the furnishing of all rebuttal expert reports.

### 3.  **Summary Judgment**

If so advised, the parties must file motions for summary judgment 45 days after the close of expert discovery.  Opposing briefs must be filed 30 days thereafter.  Reply briefs may be filed 14 days after receipt of opposing briefs.  The Court will not consider a self-styled cross-motion for summary judgment that first appears as part of papers opposing an adversary's motion for summary judgment.  After the completion of the extensive discovery, fact and expert, contemplated by this Scheduling Order, counsel should be in a position to identify "each claim or defense – or the part of each claim or defense – on which" summary judgment should be granted in their client's favor.  Rule 56(a).

### 4.  **Joinder of Parties and Amendment of Pleadings**

Amendments to the pleadings or motions relating to the joinder of parties shall be filed within nine months after the date on which fact discovery begins; *provided, however*, that after that time, any party may move to amend its pleadings under Rule 15(a)(2) on the ground that new facts or circumstances warrant an amendment.

### 5.  **Depositions**

Plaintiffs are entitled to take a total of up to and including 56 depositions.  Defendant is entitled to take up to and including 20 depositions.

### 6. Damages Analyses

In cases of this nature, damages analyses and calculations invariably accompany and form a part of the opinions of expert witnesses. Accordingly, a party's damages analysis must be furnished together with the reports of its retained experts, as provided in ¶ 2(a), *supra*.

### 7. Document Production

The production of documents in discovery falls within the direction in ¶ 1 of this Order that *all* "fact discovery shall be completed within one year of commencement."

The Court defers at this time any further order about the timing of document production. Fact discovery is now underway. Documents will undoubtedly be demanded in due course – quite a lot of them, one imagines. Counsel are expected to deal with each other with mutual good will and respect.

If disputes arise with respect to the relevance or privileged nature of particular documents, or any other issue related to discovery or production, application may be made to the Court.

### III.  CONCLUSION

The foregoing Ruling, in its entirety, constitutes the Scheduling Order of the Court under Fed. R. Civ. P. 16(b).

It is So Ordered.

Dated:  New Haven, Connecticut
        August 4, 2014

                              /s/Charles S. Haight, Jr.
                              CHARLES S. HAIGHT, JR.
                              Senior United States District Judge